Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WILFREDO ESQUILÍN ORTIZ, IRMA LUZ COLÓN BIRRIEL Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES POR AMBOS CONSTITUIDA<br><br>APELANTES<br><br>v<br><br>MUNICIPIO AUTÓNOMO DE CAROLINA<br><br>APELADOS | TA2025AP00134 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. CA2020CE01064<br><br>Sobre: Expediente de Dominio |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio, y la Jueza Martínez Cordero[1].

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de marzo de 2026.

### I.

El 16 de julio de 2025, el señor Wilfredo Esquilín Ortiz, la señora Irma Luz Colón Birriel y la Sociedad Legal de Bienes Gananciales compuesta por ambos (matrimonio Esquilín-Colón o parte apelante) presentaron un recurso de *Apelación* en el que solicitaron que revoquemos la *Sentencia* emitida el 18 de junio de 2025, notificada el 23 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario).[2] En el referido dictamen, el TPI declaró No Ha Lugar la *Petición* sobre expediente de dominio promovida por la parte apelante.[3]

El mismo 16 de julio de 2025, la parte apelante instó una *Moción solicitando término para completar apéndice.*[4] Por medio de

---

[1] Véase Orden Administrativa OATA2025-0145 del 18 de julio de 2025.
[2] Véase Entrada Núm. 1 del recurso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Véase Entrada Núm. 86 del expediente digital del caso en el SUMAC del TPI.
[4] Véase Entrada Núm. 2 del recurso en SUMAC-TA.

esta, solicitó que le concediéramos un plazo para presentar la transcripción de la prueba oral (TPO) del juicio en su fondo.

El 21 de julio de 2025, emitimos una *Resolución* en la que autorizamos la presentación de la TPO y pormenorizamos el trámite a seguir para el perfeccionamiento del recurso.[5]

Más tarde, El 16 de septiembre de 2025, emitimos otra *Resolución* en la que concedimos un término de cinco (5) días a la parte apelante para que informara el estatus de la TPO.[6]

El 19 de septiembre de 2025, el matrimonio Ortiz-Colón presentó una *Moción informativa* en la que detalló las gestiones realizadas ante el TPI relacionadas a la regrabación de los procedimientos, y solicitó un término de treinta (30) días para presentar la TPO.[7]

El 22 de septiembre de 2025, emitimos una *Resolución* a través de la cual concedimos a la parte apelante un término final hasta el 20 de octubre de 2025 para presentar la TPO estipulada.[8]

El 16 de octubre de 2025, la parte apelante instó un escrito intitulado *Solicitud de prórroga para presentar transcripción estipulada*, en el que solicitó un término adicional de quince (15) días para presentar la TPO estipulada.[9] Sostuvo que había cursado la TPO al Municipio Autónomo de Carolina (Municipio o parte apelada) ese mismo día, por lo que estimaba necesario otorgar un término para su evaluación.

El 17 de octubre de 2025, emitimos una *Resolución* mediante la cual hicimos constar el incumplimiento reiterado de las partes con la presentación de la TPO, y concedimos un término final e improrrogable hasta el 29 de octubre de 2025, para someter la

---

[5] Íd., Entrada Núm. 3.
[6] Íd., Entrada Núm. 4.
[7] Íd., Entrada Núm. 5.
[8] Íd., Entrada Núm. 6.
[9] Íd., Entrada Núm. 7.

misma.[10] Advertimos que, de incumplir se tendrían por renunciados los señalamientos referentes a la evaluación de la prueba oral.

El 20 de octubre de 2025, el Municipio presentó *Moción informativa* en la cual manifestó no haber tenido la oportunidad de evaluar la TPO, ni la regrabación de los procedimientos, dado que la parte apelante le había entregado los mismos el 17 de octubre de 2025. Añadió que, a su juicio, la TPO resultaba innecesaria, por lo que solicitó que se emitiera una orden para impedir su uso.[11]

El 21 de octubre de 2025, la parte apelante instó una *Moción en réplica* en la que destacó la importancia de la TPO para atender los errores señalados, y notificó que ese mismo día entregó copia física de la misma al Municipio.[12]

Así las cosas, el 21 de octubre de 2025, el Municipio presentó su *Alegato en oposición a la Apelación.*[13]

Al próximo día, emitimos dos (2) resoluciones. En virtud de la primera, ordenamos a las partes el estricto cumplimiento de la *Resolución* emitida el 17 de octubre de 2025.[14] Por medio de la segunda, reiteramos el término final para presentar la TPO, a saber, el 29 de octubre de 2025.[15]

El 24 de octubre de 2025, el Municipio presentó *Moción en cumplimiento de Orden* mediante la cual informó haberse comunicado con la parte apelante para coordinar una reunión y concluir el trámite correspondiente a la TPO.[16]

En esa misma fecha, las partes de epígrafe instaron una *Moción conjunta para la presentación de la transcripción estipulada* en la que presentaron la TPO estipulada.[17]

---

[10] Íd., Entrada Núm. 8.
[11] Íd., Entrada Núm. 9.
[12] Íd., Entrada Núm. 10.
[13] Id., Entrada Núm. 11.
[14] Íd., Entrada Núm. 12.
[15] Íd., Entrada Núm. 13.
[16] Íd., Entrada Núm. 14.
[17] Íd., Entrada Núm. 15.

El 27 de octubre de 2025, emitimos una *Resolución* en la que acogimos la TPO y le concedimos a la parte apelante hasta el 24 de noviembre de 2025, para presentar su alegato suplementario.[18] Además, le concedimos a la parte apelada un término de treinta (30) días para radicar su alegato en oposición, contados a partir de que la parte apelante presentara su alegato.

El 17 de noviembre de 2025, la parte apelante presentó su *Alegato Suplementario* mediante el cual requirió la revocación de la *Sentencia* apelada.[19]

El 16 de diciembre de 2025, el Municipio presentó *Réplica al Alegato Suplementario de la parte apelante* en el que solicitó que confirmemos el dictamen apelado.[20]

Contando con el beneficio de la TPO y la comparecencia de las partes, damos por perfeccionado el recurso de epígrafe y, en adelante, pormenorizamos los hechos procesales esenciales para su atención.

## II.

El caso de marras tuvo su génesis en una *Petición* sobre expediente de dominio presentada el 11 de mayo de 2020, por el matrimonio Esquilín-Colón.[21] En esta, alegó ser dueño en pleno dominio de un predio de terreno sito en el municipio de Carolina, el cual describió como sigue:

> URBANA: Solar identificado de acuerdo al plano catastral con el número K-1-A, ubicado en la Urbanización José Severo Quiñones de Carolina, Puerto Rico, compuesto de Doscientos Veintiséis punto setenta y un Metros Cuadrados (226.71 m/c). Colindando por el Norte, con Recreación y Deportes del Municipio de Carolina, Puerto Rico; por el Sur, con el Lote número K-1 de Wilfredo Esquilín e Irma Luz Birriel; por el Este, con el Lote número K-2 de Juan Ortega Colón, hoy Miguel Cartagena; y por el Oeste, con una calle propuesta.

---

[18] Íd., Entrada Núm. 17.
[19] Íd., Entrada Núm. 18.
[20] Íd., Entrada Núm. 21.
[21] Véase Entrada Núm. 1 en SUMAC-TPI.

La parte apelante sostuvo que adquirió el terreno mediante prescripción adquisitiva, pues había mantenido su posesión desde el 17 de agosto de 1972, en concepto de dueño, de forma pública, pacífica y mediante actos de dominio. Ante ello, solicitó que se acreditara su titularidad y se ordenara la inmatriculación de la finca en el Registro de la Propiedad.

Tras una prórroga concedida[22], el 8 de septiembre de 2020, el Municipio presentó una *Moción en oposición al expediente de dominio.*[23] En esencia, alegó que el predio de terreno que el matrimonio Esquilín-Colón pretendía inscribir constituía un bien de dominio y uso público, por lo que resultaba imprescriptible, inembargable e intransferible. Indicó que el solar estaba identificado en el plano catastral bajo el número 20-088-057-397-23 y formaba parte de la finca #44,439, la cual había sido adquirida mediante la Escritura de Segregación y Compraventa Núm. 69, otorgada el 21 de abril de 1981, de la Corporación de Renovación Urbana y Vivienda de Puerto Rico (CRUV). Precisó que la referida finca fue adquirida para uso público, específicamente para la ubicación de una plaza de mercado.

El 8 de septiembre de 2020, notificada al próximo día, el TPI emitió *Orden* en la que concedió un término de veinte (20) días a la parte apelante para exponer su posición, so pena de desestimar su *Petición.*[24]

El 11 de septiembre de 2020, el matrimonio Esquilín-Colón instó una *Moción solicitando orden y término adicional para radicar oposición* en la que solicitó que se ordenara al Municipio a proveer copia de los documentos a los cuales hacía referencia en su escrito

---

[22] Íd., Entradas Núm. 6 y 7.
[23] Íd., Entrada Núm. 8.
[24] Íd., Entrada Núm. 9.

en oposición, así como un término adicional para replicar este último.[25]

El 24 de septiembre de 2020, el foro primario ordenó al Municipio suministrar los referidos documentos y concedió a la parte apelante un término de veinte (20) días para presentar su réplica.[26]

El 30 de septiembre de 2020, el Municipio instó una *Moción en cumplimiento de Orden y conversión del procedimiento*, junto a la cual acompañó los siguientes documentos: (1) Escritura de Segregación y Compraventa Núm. 69; (2) determinación de la Junta de Planificación sobre la venta de terrenos al Municipio; (3) determinación de la Administración de Reglamentos y Permisos (ARPe) sobre la venta de terrenos al Municipio; (4) Certificación de Propiedad Inmueble y, (4) dos imágenes satelitales parcelarias del catastro digital del Centro de Recaudación de Ingresos Municipales (CRIM).[27] A través de la misma moción, el Municipio solicitó además que el trámite se convirtiera en uno contencioso ordinario.

Posteriormente, mediante *Orden* emitida el 3 de octubre de 2020, notificada al día siguiente, el TPI concedió un término de veinte (20) días al matrimonio Esquilín-Colón para exponer su posición sobre la moción anterior, bajo apercibimiento de convertir el procedimiento a uno de dominio contradictorio.[28]

El 7 de octubre de 2020, la parte apelante presentó una *Moción en cumplimiento de Orden y Oposición* mediante la cual levantó la defensa de cosa juzgada.[29] Argumentó que los planteamientos del Municipio ya habían sido esbozados en un caso anterior[30] donde reclamó la ocupación de varios predios de terrenos

---

[25] Íd., Entrada Núm. 10.
[26] Íd., Entrada Núm. 11.
[27] Íd., Entrada Núm. 12.
[28] Íd., Entrada Núm. 13.
[29] Íd., Entrada Núm. 14.
[30] El caso en cuestión fue identificado con el alfanumérico FAC1996-0561. Véase Entrada Núm. 14 en SUMAC-TPI.

que presuntamente formaban parte de la finca #44,439, incluyendo el predio objeto de controversia en el presente caso. Sostuvo que en el pleito anterior, el foro primario concluyó que el Municipio no demostró ser dueño de los terrenos en cuestión.

Luego, el 15 de octubre de 2020, el foro primario concedió un término de veinte (20) días a la parte apelada para fijar su posición en torno a la aplicabilidad de la doctrina de cosa juzgada.[31]

En cumplimiento, el 5 de noviembre de 2020, el Municipio presentó una *Moción en cumplimiento de Orden y solicitud de conversión de los procedimientos*.[32] Explicó que por tratarse de una propiedad pública municipal, destinada para uso público, el caso era uno de alto interés público y la aplicación de la doctrina de cosa juzgada contravenía dicho interés. Añadió que poseía un mejor derecho sobre la propiedad, por lo que reiteró su solicitud de conversión al trámite ordinario.

El 25 de noviembre de 2020, la parte apelante presentó una *Réplica* en la que insistió en la aplicación de la doctrina de cosa juzgada.[33] Argumentó que el Municipio no había podido demostrar en el pleito anterior que el solar objeto de controversia formaba parte de la finca #44,439, por lo que estaba impedido de levantar la doctrina de interés público como excepción a la defensa de cosa juzgada. Adicionalmente, sostuvo que la finca no figuraba como bien de uso público, según las disposiciones del Código Civil de Puerto Rico, por lo que esta constituía un bien patrimonial. En ese sentido, indicó que el Municipio tenía facultad para adquirir y enajenar bienes, y estos eran susceptibles de usucapión.

---

[31] Véase Entrada Núm. 15 en SUMAC-TPI.
[32] Íd., Entrada Núm. 16.
[33] Íd., Entrada Núm. 20.

Atendidos los escritos, el 14 de enero de 2021, el TPI emitió *Resolución* en la cual convirtió el procedimiento a uno contencioso ordinario.[34]

Tras varios trámites procesales, el 16 de abril de 2021, el Municipio presentó una *Moción de Sentencia Sumaria*.[35] A través de esta, reiteró que poseía un mejor derecho sobre el predio de terreno en controversia y este, por ser de dominio público, no era susceptible de ser adquirido mediante prescripción adquisitiva.

En respuesta, el 5 de mayo de 2021, el matrimonio Esquilín-Colón presentó una *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria* en la que se opuso a la moción de sentencia sumaria instada por el Municipio, y a su vez, instó su propia solicitud para la resolución sumaria del pleito.[36] En síntesis, la parte apelada reprodujo los mismos argumentos esbozados en sus mociones anteriores.

El 25 de mayo de 2021, la parte apelada se opuso a la solicitud de sentencia sumaria del matrimonio Esquilín-Colón y reiteró su solicitud.[37]

Evaluados los escritos de las partes, el 19 de agosto de 2022, notificada el 31 de agosto de 2022, el TPI emitió *Resolución* en la cual declaró No Ha Lugar ambas solicitudes de sentencia sumaria.[38] Como parte de su dictamen, el foro primario formuló trece (13) hechos incontrovertidos, los cuales transcribiremos más adelante, y concluyó que existía controversia sobre los siguientes hechos:

1. Si el solar identificado de acuerdo al plano catastral con el número 088-057-226-01-001, con el solar K-1-A, ubicado en URBANIZACIÓN JOSÉ SEVERO QUIÑONES, de Carolina Sur, Puerto Rico, compuesto de 226.71 metros cuadrados es parte del solar segregado perteneciente al Municipio que adquirió de la Corporación de Renovación Urbana y Vivienda.

---

[34] Íd., Entrada Núm. 21.
[35] Íd., Entrada Núm. 27.
[36] Íd., Entrada Núm. 31.
[37] Íd., Entrada Núm. 33.
[38] Íd., Entrada Núm. 39.

2. Si el solar identificado de acuerdo al plano catastral con el número 088-057-226-01-001, con el solar K-1-A, ubicado en URBANIZACIÓN JOSÉ SEVERO QUIÑONES, de Carolina Sur, Puerto Rico, compuesto de 226.71 metros cuadrados es uno de uso público.

El foro primario concluyó además, que la doctrina de cosa juzgada no era de aplicación al caso, puesto que no hubo claridad ni certeza sobre el inmueble en controversia en el pleito anterior. En vista de ello, razonó que estaba impedido de determinar que el inmueble objeto de controversia en el caso anterior formaba parte del terreno que la parte apelante pretendía inscribir.

Inconforme con dicha determinación, el Municipio acudió ante esta Curia mediante recurso de *certiorari* en el caso KLCE202201074.[39] No obstante, este fue denegado el 15 de noviembre de 2022 por este Tribunal.[40]

Así las cosas, el 9 de enero de 2024, se llevó a cabo la conferencia con antelación a juicio[41], donde se estipularon cinco (5) hechos incontrovertidos y la siguiente prueba documental:

1. Petición Expediente de Dominio FJV2016-1131.
2. Moción Solicitando Exclusión del Municipio de Carolina en el caso FJV2016-1131.
3. Certificación Registral Negativa emitida por el Registro Inmobiliario Digital de Puerto Rico del solar en el caso CA2020CV01064 en cuanto a procedencia y fecha.
4. Estado de Cuenta y Certificación de Valores del CRIM de 2023.
5. Decisión Junta de Planificación sobre la venta de terrenos de la CRUV al Municipio de Carolina de 1977.
6. Decisión de ARPE sobre venta de terrenos al Municipio de Carolina de 1978.
7. Sentencia en el caso civil FAC1996-0561, Municipio de Carolina vs. Wilfredo Esquilín y otros.
8. Carta del DTOP de no objeción a petición de dominio caso CA2020CV01064.[42]

---

[39] Íd., Entrada Núm. 40.
[40] Íd., Entrada Núm. 49.
[41] Véase Minuta a la Entrada Núm. 69 en el SUMAC-TPI.
[42] A petición de las partes de epígrafe el día del juicio, el exhibit identificado con el número 8 fue eliminado. Véase Minuta del juicio en su fondo, a la Entrada Núm. 85 en SUMAC-TPI.

9. Certificación Registral emitida por el Registro Inmobiliario Digital de Puerto Rico de la finca del Municipio de Carolina.
10. Escritura #69 de segregación y compraventa otorgada el 21 de abril de 1981 ante Héctor Díaz Montañez.
11. Escritura #962 de compraventa otorgada el 17 de agosto de 1972 ante el notario William Malavé Torres por la cual los demandantes adquirieron el solar K-1.
12. Dos imágenes satelitales parcelarias del catastro digital del CRIM.
13. Plano de Inscripción Parcial Urb. José Severo Quiñones del 8 de agosto de 1968.
14. Mapas de zonificación de 1970, 1992 y planos de calificación de 2007 y 2014.

El TPI celebró el juicio en su fondo el 30 de septiembre de 2024. La prueba oral de la parte apelante consistió en los testimonios del señor Wilfredo Esquilín Ortiz, parte apelante en el caso, los señores Miguel Cartagena Quiñones y Ángel Benítez Cirino, vecinos del matrimonio Esquilín-Colón, y el agrimensor Erick Martínez Arbona. A su vez, la prueba oral de la parte apelada consistió en el testimonio de la señora Annelly Diaz Figueroa, planificadora del Municipio (señora Diaz Figueroa o Planificadora).

Aquilatada la prueba, el 18 de junio de 2025, notificada el 23 de junio de 2025, el foro primario emitió la *Sentencia* apelada.[43] En esta, consignó los hechos emitidos en la *Resolución* del 19 de agosto de 2024, así como los estipulados por las partes en la conferencia con antelación a juicio, y añadió otros. Por su pertinencia a nuestro recurso, los transcribimos a continuación:

1. La parte demandante compuesta por Wilfredo Esquilín Ortiz e Irma L. Colón Birriel, mayores de edad y casados entre sí, son [dueños] del solar identificado como el K-1 del Proyecto de Vivienda a bajo costo denominado VBC-52, también conocido como la Urbanización José Severo Quiñones, radicado en el Barrio Martín González y Hoyo Mulas del término municipal de Carolina, Puerto Rico.

2. La cabida superficial del solar es de doscientos noventa y seis metros cuadrados (296.00 m/c), en

---

[43] Véase Entrada Núm. 86 en el SUMAC-TPI.

lindes por el Norte, con terrenos propiedad de la Corporación de Renovación Urbana y Vivienda (CRUV), hoy Municipio Autónomo de Carolina; por el Sur, con la Calle A; por el Este, con el solar K-2 de Juan Ortega Colón, hoy Miguel Cartagena y por el Oeste, con una calle propuesta. Dicha propiedad los demandantes la adquirieron mediante la escritura de compraventa #962 otorgada el 17 de agosto de 1972 ante el notario William Malavé Torres, de don Emilio Santos González, quien un año antes la había adquirido de la CRUV.

3. El solar K-1-A mide doscientos veinte y seis punto setenta y un metros cuadrados (226.71 m/c) y forma parte de la totalidad de la finca 44,439 propiedad del Municipio, identificada en el plano catastral del Centro de Recaudaciones de Ingresos Municipales bajo el número 20-088-057- 397-23.

4. El Municipio adquirió la finca 44,439 con cabida superficial de 21.3174 cuerdas, de su anterior dueño, la Corporación de Renovación Urbana y Vivienda (en adelante, CRUV) mediante Escritura de Segregación y Compraventa #69 el 21 de abril de 1981 de y para uso público específicamente para la ubicación de una Plaza del Mercado.

5. Que la finca matriz de la cual surge la finca 44,439, propiedad municipal y donde en parte se desarrolló la Urbanización Severo Quiñones es la finca 18,563 perteneciente originalmente a la CRUV. Era una finca de 129.3530 cuerdas, sita en los barrios Martín González y Hoyo Mulas de Carolina, Puerto Rico, inscrita al folio 36 del tomo 457, finca 18,563 de Carolina.

6. La Corporación de Renovación Urbana y de Vivienda de Puerto Rico (CRUV) fue la dueña anterior de los terrenos de los vecinos de Severo Quiñones y de los del Municipio. Era una finca de 129.3630 cuerdas, sita en los barrios Martín González y Hoyo Mulas de Carolina, Puerto Rico, inscrita al folio 3, del tomo 457, finca #18,563 de Carolina.

7. De dicha finca la CRUV segregó y vendió a demandados en el FAC1996-0561, lotes de terreno a partir del 10 de septiembre de 1960 y hasta el 19 de septiembre de 1972. Los títulos otorgados por la CRUV siguen el modelo de la escritura #165 de 10 de septiembre de 1960, otorgada ante el notario Elí Arroyo, conforme lo estipulado por las partes.

8. Cuando la CRUV le vende al Municipio de Carolina (21 de abril de 1981), el último de los demandados en el FAC1996-0561 adquirentes, o su dueño anterior, ya tenía título desde hacía aproximadamente 8 años y 7 meses. El Municipio presentó su título para inscripción en el Registro de la Propiedad el 23 de octubre de 1984, o sea, más de 10 años después de haber adquirido el último de los adquirentes.

9. Todas las ventas que hizo la CRUV a los vecinos, o dueños anteriores y al Municipio fueron por precio alzado y no por unidad. Fue una venta entre linderos.

10. Con posterioridad al plano con el cual la CRUV vendió a los vecinos y con anterioridad a la venta al Municipio, la CRUV enmendó para una mayor cabida el solar GG-131.

11. En 1996, el Municipio instó una acción de interdicto y de [reivindicación] en contra del Sr. Wilfredo Esquilín Ortiz y otros vecinos, codificada con FAC1996-0561. Dicho pleito concluyó el 2 de marzo de 2001 mediante Sentencia de desestimación al amparo de la Regla 39.2 de Procedimiento Civil.

12. Existe una Certificación de Propiedad Inmueble del Registro de la Propiedad NEGATIVA con relación al predio en controversia:

> Solar identificado de acuerdo al plano catastral con el número 088-057-226-01-001, con el solar K-1-A, ubicado en URBANIZACIÓN JOSÉ SEVERO QUIÑONES, de Carolina Sur, Puerto Rico, compuesto de 226.71 metros cuadrados. Colindando por el norte con Recreación y Deportes del Municipio de Carolina; por el Sur con Lote K-1 de Wilfredo Esquilín e Irma Colón Birriel; por el este con Lote K-2 de Miguel Cartagena; y por el oeste con calle propuesta.

13. La siguiente propiedad surge inscrita a favor del Municipio de Carolina, quien adquirió por Compraventa que le hiciera a la Corporación de Renovación Urbana y Vivienda de Puerto Rico, por precio de $1,005,550.00. En virtud de la escritura 69, otorgada en San Juan el 21 de abril de 1981 ante el notario Héctor Díaz Montañez, según surge de la inscripción 1ª.

> Rústica: BARRIO PUEBLO DE CAROLINA de Carolina Sur. Lote: Cabida: 83,785.8756 Metros Cuadrados. Linderos: Norte, con la Urbanización Villa Carolina. Sur, con los solares del 1 al 15 del Bloque K, proyecto VBC4 de la Corporación de Renovación Urbana y Vivienda, calle de acceso y solares 46, 49, 50 y 23 del Bloque GG del Proyecto VBC 52 de la Corporación. Este, con la calle número 19. Oeste, con los solares del 1-22 inclusive, calle número 10 y solar número 131 del Bloque FF del Proyecto VBC52 de la Corporación de Renovación Urbana y Vivienda. Se segrega de la finca 18, 563 al folio 36 del tomo 457 de Carolina.

14. El solar K-1-A colinda por la parte posterior del solar K-1. El solar K-1-A se encuentra cercado con una verja desde 1973 aproximadamente. Este se ha encontrado bajo la posesión de los promoventes

desde dicha fecha, quienes lo dedican a la siembra de frutos menores.

15. Previo a que los promoventes tomaran posesión del solar K-1-A, el fundo se encontraba baldío.

16. Los promoventes, en el 2016, presentaron una petición de expediente dominio codificada como *Wilfredo Esquilín Ortiz y otros*, F JV2016-1131, sobre la finca K-1-A. En dicho procedimiento, el Municipio compareció y manifestó no tener objeción a que se reconociera justificado el [título] de los promoventes sobre el K-1-A. En efecto, no fue la primera vez que el Municipio compareció sobre el particular. Así también manifestaron hacerlo, en el F JV2015-0913.

17. Salvo la acción en Municipio instada en el FAC1996-0561, la posesión como titular de los promoventes sobre el K-1-A, no ha sido cuestionada.

18. El plan de ordenación territorial establece cuáles son los usos del suelo según la política pública que posea el ayuntamiento.

19. La finca 44,439 tenía una designación de uso público cuando fue adquirida en el plan de ordenación territorial. Al pasar de los años al presente, la zonificación del área de la finca 44,439 ha sido identificada como DP1, a saber, dotacional-plaza o parque 1.

20. Desde noviembre de 1970, el área que constituye la finca 44,439 ha sido identificada en el Mapa de Zonificación como un terreno público.

21. La finca 44,439 se adquirió para realizar una Plaza del mercado. La Plaza del mercado se construyó pero en la actualidad es la Escuela de los deportes. También hay un campo de tiro, un parque de pelota AA, Boys and Girls Club, facilidades para administrar el área deportiva del municipio, un parque de soccer, estacionamiento, parque de pelota [para] personas con diversidad funcional, área de recreación pasiva, la cancha Guillermo Ángulo y una piscina.

De conformidad a lo anterior, el foro primario determinó que el predio de terreno en controversia era de uso público y formaba parte de la finca #44,439. Concluyó que la mera posesión de la parte apelante no había producido la desafectación del terreno, y el Municipio había sido consistente en mantener el carácter de dominio público. Asimismo, razonó que la comparecencia del Municipio a procedimientos previos de expedientes de dominio sin objeción no constituía un acto de desafectación. En consecuencia,

declaró *No Ha Lugar* la *Petición* incoada por el matrimonio Esquilín-Colón.

En desacuerdo, la parte apelante acudió ante este foro mediante el recurso de *Apelación* que nos ocupa y le imputó al TPI la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia, Sala Superior de Carolina, al dictar sentencia desestimando la petición de dominio por el fundamento de que el predio ocupado por los peticionarios-apelantes es uno de dominio público, no pudiendo ser enajenable, ni adquirido por usucapión.

> Erró el Tribunal de Primera Instancia, Sala Superior de Carolina, al dictar sentencia desestimando la petición de dominio sin resolver que a las alegaciones del Municipio Autónomo de Carolina le es aplicable la defensa de cosa juzgada.

Es su contención que, la zonificación del predio en controversia cambió con el trato que le dio CRUV previo a la venta del Municipio. Explica que CRUV desarrolló solares y construyó viviendas en el terreno original, lo que tuvo el efecto de que adquiriera la calificación de patrimonial. En ese sentido, sostiene que al momento en que el Municipio compró la finca #44,439, esta ya era patrimonial. Arguye además que el Municipio solo utilizó una parte de la finca para construir la plaza del mercado, por lo que no toda la finca constituye un bien de dominio público. En otras palabras, esgrime que aun cuando las plazas sí constituyen un bien de dominio público, "no puede esa calificación extenderse más allá del predio que esa plaza ocupe".[44]

De otra parte, argumenta, nuevamente, que están presentes todos los requisitos que exige la doctrina de cosa juzgada, por lo que es de aplicación.

El 21 de octubre de 2025, el Municipio presentó *Alegato en oposición a la apelación* en el que solicitó que confirmemos el

---

[44] Véase Entrada Núm. 1 en SUMAC-TA, a la pág. 16.

dictamen apelado.[45] Como parte de su escrito, incorpora por referencia los planteamientos esbozados en su *Solicitud de Sentencia Sumaria*. Además, hace hincapié en que el terreno forma parte de la finca #44,439, la cual, según arguye, es de uso y dominio público. Argumenta que dicha calificación del terreno ha sido constante y reitera que no es susceptible de usucapión.

Por otro lado, aduce que la doctrina de cosa juzgada no es aplicable al caso de autos, pues del dictamen emitido en el caso FAC1996-0561 no surge certeza en cuanto al inmueble objeto de reivindicación, ni sobre la porción específica ocupada por los demandados en el caso. Señala que así fue resuelto por el TPI mediante la *Resolución* del 19 de agosto de 2022.

El 17 de noviembre de 2025, el matrimonio Esquilín-Colón presentó un *Alegato Suplementario* en el que repite varios de los argumentos planteados en su recurso de apelación.[46] Añade que la escritura mediante la cual el Municipio adquirió el terreno solo indica que este sería destinado a la construcción de una plaza de mercado, lo cual, por sí solo, no constituye un acto de afectación de un bien patrimonial a uno de uso público.

Posteriormente, el 16 de diciembre de 2025, el Municipio presentó una *Réplica al Alegato Suplementario de la parte apelante*, en la que insiste que los bienes de uso y dominio público han sido excluidos del tráfico jurídico, por lo que se debe confirmar la determinación del foro primario.[47]

En adelante, evaluaremos las normas jurídicas atinentes a los errores planteados por la parte apelante.

---

[45] Véase Entrada Núm. 11 en SUMAC-TA.
[46] Íd., Entrada Núm. 18.
[47] Íd., Entrada Núm. 21.

### III.

### A.

De conformidad a las disposiciones del Código Civil de 1930[48], la propiedad y los demás derechos sobre los bienes pueden adquirirse por medio de la prescripción adquisitiva o usucapión. Artículos 549 y 1830 del Código Civil de 1930, 31 LPRA ant. secs. 1931 y 5241. La prescripción adquisitiva constituye una consecuencia de la posesión civil mantenida por un determinado número de años. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 181 (2005), citando a J.R. Vélez Torres, *Curso de Derecho Civil: los bienes, los derechos reales*, Madrid, Offigraf, 1983, T. II, pág. 263. Su efecto principal es la adquisición del dominio. *Adm. Terrenos v. SLG Rivera-Morales*, 187 DPR 15, 26 (2012). De modo que, transcurrido el plazo fijado en nuestro ordenamiento, inmediatamente se materializa el dominio en la persona que, en unión de sus dueños anteriores, ha poseído el bien durante ese periodo cumpliendo con los requisitos en ley. Íd.

La prescripción adquisitiva puede ser ordinaria o extraordinaria. Íd., pág. 27. La segunda modalidad, pertinente al presente caso, exige la posesión de un bien inmueble de forma pública, pacífica, en concepto de dueño, de mala fe, sin justo título y de forma ininterrumpida por treinta (30) años. Artículos 1841 y 1859 del Código Civil de 1930, 31 LPRA ant. secs. 5262 y 5280; *Sucn. Maldonado v. Sucn. Maldonado*, supra, pág. 182.

Cabe señalar que la posesión requerida para adquirir el dominio de un bien inmueble mediante usucapión es la civil y no la natural. Íd. El Artículo 360 del Código Civil de 1930 define la posesión civil como la tenencia o disfrute de la cosa o derecho,

---

[48] La *Petición* que dio inicio al presente pleito fue instada previo a la vigencia del nuevo Código Civil de 2020, por lo que es de aplicación el derogado Código Civil de 1930.

unidos a la intención de haber la cosa o derecho como suyos. 31 LPRA ant. sec. 1421. Es meritorio apuntar que "solo la posesión en concepto de dueño puede servir de título para adquirir el dominio". *Adm. Terrenos v. SLG Rivera-Morales*, supra, pág. 29. Se entiende que un inmueble es poseído en concepto de dueño "cuando la opinión pública o percepción general entiende que es el verdadero dueño, unido a los actos que el poseedor realiza con relación a la propiedad, independientemente de la creencia sobre el particular que este pueda tener." Íd.

**B.**

Nuestro ordenamiento jurídico define el concepto de bienes como todo aquello que pueda constituir riqueza o fortuna. Artículo 252 del Código Civil de 1930, 31 LPRA ant. sec. 1021. Estos se clasifican como comunes, de dominio público o de dominio privado. Artículo 253 del Código Civil de 1930, 31 LPRA ant. sec. 1022; *Watchtower Bible et al. v. Mun. Dorado I*, 192 DPR 73, 84 (2014); *San Gerónimo Caribe Project v. E.L.A. I*, 174 DPR 518, 557 (2008). Los bienes comunes son aquellos cuya propiedad no pertenece a nadie en particular y que pueden ser utilizados libremente de acuerdo con la propia naturaleza; por ejemplo, el aire, las aguas pluviales, el mar y sus riberas. Artículo 254 del Código Civil de 1930, 31 LPRA ant. sec. 1023; *Watchtower Bible et al. v. Mun. Dorado I*, supra; *San Gerónimo Caribe Project v. E.L.A. I*, supra, pág. 554. Por su parte, los bienes de dominio público son definidos como aquellos "destinados al uso público, como los caminos, canales, ríos, torrentes, y otros análogos." Artículo 255 del Código Civil de 1930, 31 LPRA ant. sec. 1024; *Watchtower Bible et al. v. Mun. Dorado I*, supra, pág. 86; *San Gerónimo Caribe Project v. E.L.A. I*, supra, pág. 556. Se consideran también de uso público "los caminos estaduales y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicos de servicio general,

costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico". Artículo 256 del Código Civil de 1930, 31 LPRA ant. sec. 1025; *Watchtower Bible et al. v. Mun. Dorado I*, supra, págs. 86-87; *San Gerónimo Caribe Project v. E.L.A. I*, supra. Asimismo, el Artículo 274 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 1082, puntualiza otros bienes que también pueden considerarse de dominio público, a saber:

> Entre las cosas que no son susceptibles de apropiación están comprendidas aquellas que no pueden ser propiedad particular por razón de su objeto, tales como las cosas en común o sean aquéllas cuyo uso y disfrute pertenece a todos los hombres.
>
> Hay otras cosas, por el contrario, que, aunque por su naturaleza son susceptibles de propiedad particular, pierden esta cualidad como consecuencia de la aplicación que de ellas se hace para fines públicos incompatibles con la propiedad privada, si bien pueden adquirir su primitiva condición tan pronto cese el fin público que se les hubiera dado; tales son los terrenos de las carreteras, calles y plazas públicas.[49]

Todos los demás bienes que posea el Estado o los municipios son patrimoniales y se rigen por las disposiciones del Código Civil. Artículo 256 del Código Civil de 1930, 31 LPRA ant. sec.1025; *Watchtower Bible et al. v. Mun. Dorado I*, supra, pág. 87. Así pues, se consideran bienes privados tanto los patrimoniales del Estado, como los que pertenecen a los particulares, ya sea individual o colectivamente. Artículo 257 del Código Civil de 1930, 31 LPRA ant. sec. 1026; *Watchtower Bible et al. v. Mun. Dorado I*, supra, pág. 84.

Cabe señalar que los bienes de dominio público, aun cuando por su naturaleza pueden pertenecer al dominio privado, no son susceptibles de apropiación. Artículo 274 del Código Civil de 1930, 31 LPRA ant. sec. 1082. Al igual que los comunes, estos son

---

[49] Véase también *Watchtower Bible et al. v. Mun. Dorado I*, supra, pág. 88; *San Gerónimo Caribe Project v. E.L.A. I*, supra, pág. 558.

inembargables, imprescriptibles e inalienables. ***Watchtower Bible et al. v. Mun. Dorado I***, supra, pág. 85; ***Figueroa v. Municipio de San Juan***, 98 DPR 534, 562–563 (1970). Es decir que estos no pueden ser enajenados ni se pueden poseer privadamente por disposición de ley. ***Watchtower Bible et al. v. Mun. Dorado I***, supra; ***San Gerónimo Caribe Project v. E.L.A. I***, supra, pág. 558. Del mismo modo, no pueden ser adquiridos mediante prescripción adquisitiva o usucapión. Artículo 1830 del Código Civil de 1930, 31 LPRA ant. sec. 5241.

Al amparo de ello, la jurisprudencia vigente reconoce que "en todo caso, lo que define a estos bienes es el uso público al que se destinan". ***Watchtower Bible et al. v. Mun. Dorado I***, supra, pág. 89. Por tanto, una vez un bien es destinado a un fin o interés público, este adquiere la clasificación jurídica de dominio público, independientemente de su naturaleza o a quién pertenece. Íd.

## C.

Cónsono a lo anterior, un bien privado puede transformarse en uno de dominio público, y viceversa, mediante actos de afectación y desafectación. El acto de afectación implica que determinado bien ha sido destinado a un fin de interés público. ***San Gerónimo Caribe Project v. E.L.A. I***, supra, pág. 564. Tal afectación puede ocurrir por virtud de una declaración legislativa o mediante actos administrativos del Estado amparados en alguna ley. Íd., pág. 565. Asimismo, un bien cuyo uso es común, por su naturaleza, puede adquirir la clasificación de dominio público sin que sea necesario un acto ulterior del soberano. Íd. Por otra parte, es posible que un bien quede afectado mediante un "acto singular del soberano para construir o establecer un inmueble para fines públicos." Íd.

Así, el factor determinante para identificar un bien de dominio público será su uso público, pues tal característica no depende de su naturaleza física o geológica. "De ahí que un bien, originalmente

de dominio público, pueda transformarse en bien patrimonial, susceptible de enajenación, si su uso cesa de ser público." Íd., citando a M. Godreau y J.A. Giusti, _Las concesiones de la Corona y propiedad de la tierra en Puerto Rico, siglos XVI-XX: Un estudio jurídico_, 62 Rev. Jur. UPR 351, 563 (1993). Para ello, se requiere la ocurrencia de un acto de desafectación, el cual produce el efecto de la pérdida de la clasificación de dominio público del bien en cuestión. Así, para que éste adquiera condición patrimonial, se exige que haya cesado el fin público que se le hubiere dado. **San Gerónimo Caribe Project v. E.L.A. I**, supra, pág. 565-566.

Ahora bien, el hecho de que haya cesado el uso público, por sí solo, no resulta suficiente para que el bien quede afectado. La desafectación exige además que medie uno de los siguientes: (1) un acto soberanía, ya sea mediante la aprobación de una ley a tales efectos o mediante un acto administrativo al amparo de los poderes delegados para ello o, (2) un cambio en la condición natural del bien que lo excluya de la clasificación otorgada por la propia ley. Íd., pág. 567. Incluso, es posible que nuestro ordenamiento pueda requerir una combinación de las modalidades de desafectación para que se entienda que esta procede conforme a derecho. Íd.

### D.

El Tribunal Supremo, citando al tratadista español Manresa, definió la doctrina de cosa juzgada como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad". **Presidential v. Transcaribe**, 186 DPR 263, 273 (2012). Esta doctrina tiene el propósito de "[…] ponerle fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribunales y, de este modo, garantizar la certidumbre y la seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes." **Ortiz Matías et al. v. Mora Development**, 187 DPR 649, 655 (2013). Véase

también *Presidential v. Transcaribe*, supra, pág. 273-274; *Worldwide Food Dis., Inc. v. Colón et al.*, 133 DPR 827, 833-834 (1993). Así, la doctrina impide que se litigue dos veces una misma causa de acción donde concurran la más perfecta identidad de cosas, causas, litigantes y la calidad con que lo fueron. Íd.

Ahora bien, la defensa de cosa juzgada no opera de manera automática. No debe aplicarse inflexiblemente, en particular, cuando al hacerlo se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público. *Meléndez v. García*, 158 DPR 77, 92 (2002); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 736 (1978). Su presunción se activa cuando concurre la perfecta identidad de causa, cosas, partes y calidad en que lo fueron en un pleito anterior. *Ortiz Matías et. al. v. Mora Development*, supra. En ese sentido, el requisito de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en torno a la cuestión planteada. *Presidential v. Transcaribe*, 186 DPR 263, 275 (2012). Al determinar si media identidad de causa de acción es necesario evaluar si ambas reclamaciones surgen de la misma transacción o núcleo de hechos. Íd. En cuanto a cosa, se refiere al objeto o la materia sobre la cual se ejercita la acción, aunque haya disminuido o alterado. Íd., pág. 274. En este contexto, las partes significan quienes intervienen en el proceso, a nombre y en interés propio, y quienes resultarían directamente afectados por la excepción de la cosa juzgada. Íd., pág. 276.

### E.

La doctrina de la ley del caso es una manifestación del principio de que las adjudicaciones deben tener fin. *Rosso Descartes v. BGF*, 187 DPR 184, 192 (2012). Su propósito es velar por el trámite ordenado y pronto de los litigios, así como promover la estabilidad y certeza del derecho. Íd., pág. 193. De esta forma, las

partes pueden conducirse en el pleito sobre directrices judiciales confiables y certeras. ***Núñez Borges v. Pauneto Rivera***, 130 DPR 749, 754 (1992).

En virtud de esta doctrina, es la norma que los planteamientos que han sido adjudicados en el ámbito judicial, a través de un dictamen firme, constituyen la ley del caso y, por eso, sus determinaciones y asuntos decididos obligan tanto al tribunal inferior, como al que las dictó, impidiendo que puedan ser reexaminados. ***Rosso Descartes v. BGF***, supra; ***Mgmt. Adm. Servs. Corp. v. E.L.A.***, 152 DPR 599, 606-607 (2000).

Ahora bien, la doctrina de la ley del caso no representa un mandato invariable o inflexible, recoge una costumbre: que se respeten como finales las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa. ***Núñez Borges v. Pauneto Rivera***, supra. De la mano con esto, esta doctrina representa una sana práctica judicial, no una regla inviolable. ***Torres Cruz v. Municipio de San Juan***, 103 DPR 217, 222 (1975); ***Don Quixote Hotel v. Tribunal Superior***, 100 DPR 19, 30 (1971). Así, si un tribunal entiende que la ley del caso antes establecida es errónea y puede causar una grave injusticia, puede aplicar una norma de derecho distinta, en aras de resolver justamente. Íd. Empero, una determinación emitida por un tribunal previamente no debe alterarse, **a menos que** surja del expediente una variación de hechos del caso o un estado de derecho particular. ***Rosso Descartes v. BGF***, supra, pág. 192-193; ***Mgmt. Adm. Servs. Corp. v. E.L.A.***, supra, pág. 607. Cónsono con esto último, la doctrina de la ley del caso no es férrea, ni de aplicación absoluta, si conduce a resultados manifiestamente injustos. ***Mgmt. Adm. Servs. Corp. v. E.L.A.***, supra, pág. 608, citando a ***Noriega v. Gobernador***, 130 DPR 919, 931 (1992).

**IV.**

En el presente caso, en su primer señalamiento de error, el matrimonio Esquilín-Colón sostiene que el TPI incidió al desestimar su *Petición* y concluir que el predio en controversia constituye un bien de dominio público.[50] Argumenta que dicha clasificación del terreno cambió a patrimonial previo a su venta al Municipio, toda vez que el dueño anterior desarrolló solares y construyó viviendas en partes de la finca original. Añade que, aunque en la Escritura de Segregación y Compraventa Núm. 69 se dispuso que la finca #44,439 estaría destinada a la construcción de una plaza de mercado, el Municipio solo utilizó una porción del predio para tal fin, por lo que, a su juicio, no toda la finca podía considerarse de uso público.

En oposición, el Municipio sostiene que la franja de terreno en controversia forma parte de la finca #44,439, la cual ha mantenido su clasificación de uso público desde antes de su adquisición. Esgrime que no ha mediado ningún acto de desafectación que transforme la naturaleza jurídica del terreno, por lo que este no puede ser adquirido mediante prescripción adquisitiva.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, resolvemos, en correcta práctica adjudicativa apelativa, que la determinación del foro primario está sustentada en la prueba que obra en el expediente.

De conformidad al derecho reseñado, la usucapión únicamente opera respecto a los bienes privados, a saber, los pertenecientes a particulares y los patrimoniales del Estado. Véase, Artículos 256, 257, 274 y 1830 del Código Civil de 1930, 31 LPRA

---

[50] Advertimos que la *Sentencia* recurrida hace referencia a las disposiciones del Código Civil de 2020, las cuales <u>no</u> son de aplicación al presente caso. No obstante, dichas normas están comprendidas en el Código Civil de 1930 bajo numeración distinta, y su aplicación no incide en el análisis realizado por el foro primario.

ant. secs. 1025, 1026, 1082 y 5241. Los bienes de dominio público, en cambio, son inembargables, imprescriptibles e inalienables mientras conserven tal carácter. ***Watchtower Bible et al. v. Mun. Dorado I***, supra, pág. 85; ***Figueroa v. Municipio de San Juan***, supra. Para que un bien de dominio público adquiera naturaleza patrimonial, susceptible de usucapión, es necesario que cese su uso público y a su vez, concurra uno de los siguientes: (1) un acto de soberanía del Estado o, (2) un cambio en la condición natural del bien. ***San Gerónimo Caribe Project v. E.L.A. I***, supra, pág. 565-567. Ninguno de estos supuestos se configura en el presente caso.

Conforme surge del expediente, los mapas de zonificación presentados por el Municipio reflejan que la finca #44,439 ha estado clasificada como un bien de dominio público desde 1970.[51] Esto es incluso previo a su adquisición por el Municipio. Posteriormente, mediante la Escritura de Segregación y Compraventa Núm. 69, la referida finca #44,439 fue vendida al Municipio con el propósito de que fuese destinada a la construcción de una plaza de mercado. Conforme a las propias alegaciones del matrimonio Esquilín-Colón, y a la prueba testifical desfilada, incluyendo el testimonio de la Planificadora del Municipio, dicha plaza fue construida.[52]

Si bien es cierto que la plaza dejó de operar, del expediente no surge que el Municipio haya realizado acto alguno de desafectación del terreno. Por el contrario, la prueba vertida demuestra que la finca #44,439 ha continuado destinada a fines públicos. Adviértase que según el testimonio de la señora Diaz Figueroa, en este espacio hoy día ubican la Escuela de los Deportes de Carolina, un campo de tiro de la Policía Municipal, un parque de pelota doble A, las facilidades para administrar las áreas deportivas del Municipio, el *Boys and Girls Club*, un parque de *soccer*, estacionamiento, un área

---

[51] Véase Anejo 5 de la Entrada Núm. 27 en SUMAC-TPI.
[52] Véase TPO, pág. 154, línea 17.

de recreación pasiva, un parque para personas impedidas, entre otros.[53]

En esa línea, el señalamiento del matrimonio Esquilín-Colón relativo al desarrollo de solares por parte de CRUV y sus implicaciones en la clasificación del terreno no nos persuade. A juicio de este foro, las actuaciones de CRUV no constituyeron el acto de desafectación necesario para el cambio de clasificación del terreno. Tampoco nos persuade el argumento esbozado por esta misma parte, en cuanto a que solo una parte de la finca #44,439 fue ocupada por la plaza de mercado y que, por tanto, no todo el predio es de uso público. Nada en el ordenamiento jurídico dispone que la clasificación de un terreno se limita al espacio edificado, sino que esta se extiende al predio en conjunto mientras mantenga su uso y dominio público.

No habiéndose demostrado la ocurrencia de un acto de desafectación, es forzoso concluir que la finca #44,439, de la cual forma parte el predio de terreno en controversia, conserva su clasificación de uso público. Siendo así, el matrimonio Esquilín-Colón está impedido de invocar la prescripción adquisitiva contra el predio en cuestión. En otras palabras, aun en el supuesto de que se hayan dado todos los elementos que exige la figura de la usucapión —lo cual no negamos ni reconocemos— no es posible que la parte apelante adquiera el predio de terreno en controversia mediante prescripción adquisitiva. Así, concluimos que el primer señalamiento de error no se cometió.

En su segundo señalamiento de error, el matrimonio Esquilín-Colón insiste en que se producen los requisitos para la aplicación de la doctrina de cosa juzgada. Añade que el foro primario no abordó ni resolvió dicho asunto.

---

[53] Íd., pág. 154, líneas 17-24 y pág. 155, líneas 1-3.

Por el contrario, la parte apelada sostiene que el asunto sí fue resuelto por el TPI. Veamos.

Conforme surge del expediente, la primera ocasión en que la parte apelante planteó la aplicación de la doctrina de cosa juzgada fue el 7 de octubre de 2020, mediante la *Moción en cumplimiento de orden y oposición.*[54] Dicho escrito respondió a una orden emitida por el foro primario, en atención a la solicitud del Municipio para la conversión de los procedimientos al trámite ordinario.[55] Tras varias réplicas de las partes en cuanto al asunto[56], el 14 de enero de 2021, el TPI ordenó la conversión del procedimiento a uno contencioso ordinario.[57] Dicho dictamen no fue objeto de reconsideración por la parte apelante, y esta tampoco presentó un recurso de *Certiorari.*

Posteriormente, el 5 de mayo de 2021, el matrimonio Esquilín-Colón reafirmó su argumento a través de la *Moción en oposición a sentencia sumaria y solicitud de sentencia sumaria.*[58] Dicha solicitud fue atendida y resuelta por el foro primario mediante la *Resolución* emitida el 19 de agosto de 2022, notificada el 31 de agosto de 2022.[59] Según reseñado, el TPI concluyó que la doctrina de cosa juzgada no era de aplicación, pues le era imposible determinar si el predio de terreno en controversia en el presente caso era el mismo del pleito anterior. Esto, toda vez que el Municipio no logró identificar con certeza el predio que intentaba reivindicar en el caso FAC1996-0561.

Surge de lo anterior que el asunto fue atendido en sus méritos y resuelto por el TPI. El dictamen aludido en el párrafo que antecede tampoco fue objeto de reconsideración por el matrimonio Esquilín-

---

[54] Véase Entrada Núm. 14 en el SUMAC-TPI.
[55] Íd., Entradas Núm. 13 y 12 respectivamente.
[56] Íd., Entradas Núm. 16 y Núm. 20.
[57] Íd., Entrada Núm. 21.
[58] Íd., Entrada Núm. 31.
[59] Íd., Entrada Núm. 39.

Colón, ni se cuestionó ante este foro revisor mediante recurso de *Certiorari.*

Así, ambos dictámenes advinieron finales y firmes y se convirtieron en la ley del caso, por lo que la parte apelante está imposibilitada de argumentar nuevamente la doctrina de cosa juzgada.

Cabe señalar que, aun si se asumiera, para fines argumentativos, que el planteamiento pudiera reiterarse, el resultado no cambiaría. Al evaluar detenidamente los documentos que obran en el expediente, con especial atención a la sentencia emitida en el caso FAC1996-0561[60], resolvemos que la doctrina de cosa juzgada no es de aplicación al presente caso. Como bien determinó el TPI, no hay manera de conocer si se trata del mismo predio de terreno en ambos casos, lo que impide el cumplimiento de los requisitos esenciales de la doctrina de cosa juzgada. En consecuencia, razonamos que el segundo señalamiento de error tampoco fue cometido.

En síntesis, ninguno de los errores señalados fueron cometidos. El TPI actuó correctamente al desestimar la *Petición* presentada por el matrimonio Esquilín-Colón, por lo que procede confirmar el dictamen apelado.

**V.**

Por los fundamentos pormenorizados, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[60] Véase Anejo 1 de la Entrada Núm. 14 en el SUMAC-TPI.